**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Mathiowetz Construction Company, a Minnesota corporation,

Plaintiff,

v.

Minnesota Department of Transportation; Elwyn Tinklenberg, Commissioner; Southern Minnesota Construction Co., Inc.; and Local No. 49 International Union of Operating Engineers,

Defendants.

Civil No. 01-548 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Patrick Lee-O'Halloran, Esq., and Dean B. Thomson, Esq., Fabyanske Westra & Hart, 920 Second Avenue South, Suite 1100, Minneapolis, MN 55402, appeared on behalf of Plaintiff.

Tom Vasaly, Assistant Attorney General, Suite 1100, 445 Minnesota Street, St. Paul, MN 55101, appeared on behalf of Defendant Minnesota Department of Transportation and Elwyn Tinklenberg.

Kelly Jeanetta, Esq., and Richard Miller, Esq., Miller O'Brien, 1208 Plymouth Building, 12 South Sixth Street, Minneapolis, MN 55402, appeared on behalf of Defendant Local No. 49 International Union of Operating Engineers.

Jim Yarosch, Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., Suite 1300, 100 Washington Avenue South, Minneapolis, MN 55401, appeared on behalf of Defendant Southern Minnesota Construction Co., Inc.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 6, 2001, pursuant to Plaintiff's Motion for a Temporary Restraining Order. For the reasons set forth below, Plaintiff's motion is denied.

APR 16 2001
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

**Background**

This action involves the bidding process for a Minnesota Department of Transportation Highway Construction Project, SP No. 0801-0028 ("the Project"), for grading, paving, and related road construction on Highway 4 in Sleepy Eye, Minnesota. The Project was originally let in 2000, but there were no acceptable bids at that time. The Project was re-let on February 23, 2001.

The Minnesota Department of Transportation ("MNDOT") received two bids on the Project: one from Plaintiff Mathiowetz Construction Company ("Mathiowetz") for $3,253,119.99, and a second from Defendant Southern Minnesota Construction Co. ("SMC") for $3,113,848.98. MNDOT accepted SMC's bid, and the two bidders were notified. At present, the award has not yet been fully processed, but SMC asserts that it has begun to mobilize equipment, enter into material supply contracts, and schedule employees to work on the Project. Construction on the Project is expected to begin in May of this year.

On March 5, 2001, Mathiowetz drafted a letter to MNDOT opposing the award to SMC on the grounds that the SMC bid was "illegal." MNDOT declined to delay awarding the contract or to engage in any investigation based on what MNDOT considered only a vague allegation with no supporting evidence. Mathiowetz then filed this action and now seeks a temporary restraining order.

Mathiowetz alleges that SMC was able to offer an artificially low bid on the Project because it was the recipient of a "grant" from Defendant International Union of Operating Engineers Local No. 49 ("the Union").[1] The Union maintains, from its regularly collected

---

[1] In the Complaint and documents supporting this motion, Mathiowetz alleges that (continued...)

membership dues, a fund for "target projects." Specifically, the Union may provide certain contractors with a grant to defray the costs of using union employees and to thus allow the contractors to bid more competitively. According to the Union, the fund is used primarily as an inducement to non-union contractors, a carrot the Union can offer to encourage these contractors to use union employees. The funds may be used for other purposes, though, such as offsetting the costs of paying the wages required by the Union's collective bargaining agreement. The fund and the grants therefrom are generally referred to as the "Market Recovery Program" ("MRP").

According to Fred Dereschuk, the Business Manager and Financial Secretary for the Union, the MRP is funded entirely by membership dues. Union members pay both working and monthly dues. Union members are charged working dues at a rate of 1½% of their hourly wage; working dues are typically paid through a paycheck deduction, although some Union members pay working dues separately. According to Dereschuk, "six cents ($.06) per hour of working dues [is] transferred to a separate Market Recovery account." Aff. of Fred Dereschuk, ¶ 14. Thus, no matter what the hourly wage of a Union employee, the Union collects six cents per man-hour to fund the MRP. The difference between 1½% of the employee's hourly wage and six cents is used for other dues-funded programs, projects, and expenses.

Mathiowetz asserts that the MRP violates the federal Davis-Bacon Act, 40 U.S.C. § 276a(a), and the Minnesota Prevailing Wage Act, Minn. Stat. § 177.44, because the MRP

---

[1](...continued)
the Union has promised SMC an amount between $100,000 and $300,000. Mathiowetz has little more than hearsay to support this allegation. The Union and SMC admit, however, that the Union has offered SMC an $18,000 grant. The Union offered the grant three days before the bids on the project were due; under the terms of the grant offer, SMC has ten days after the contract is officially awarded in which to accept the grant; otherwise the grant will be forfeited. Because MNDOT has not officially awarded the contract yet, it seems to the Court that the ten-day acceptance period has not yet begun to run.

returns wages to contractors, via the Union, so that the employee effectively makes less than the statutorily required prevailing wage. For example, Mathiowetz has offered evidence that, for Group 4 laborers in Minnesota's Region 10 (which includes Sleepy Eye), the 2000 Union wage and the 2000 prevailing wage were both $26.66; once $.06 is deducted for contribution to the MRP, those laborers only made $26.60 per hour, less than the statutory minimum wage. Mathiowetz further asserts that SMC's bid violates Minn. Stat. § 325D.04, which forbids selling any "commodity, article, goods, wares, or merchandise" below cost. Finally, Mathiowetz alleges that the grant from the Union to SMC, a grant made possible by prior violations of the Davis-Bacon Act and the Minnesota Prevailing Wage Act, constitutes collusion and allows for predatory pricing in violation of federal and state antitrust statutes.

Mathiowetz has brought this motion for a temporary restraining order to prevent MNDOT and its Commissioner, Elwyn Tinklenberg, from awarding the contract for the Project to SMC.[2]

**Discussion**

**1. Standard of Review**

In the Eighth Circuit, a temporary restraining order or preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. *See Dataphase*

---

[2] As SMC and the Union have noted, the Eleventh Amendment prohibits this Court from exercising jurisdiction over the State of Minnesota. However, under the doctrine of *Ex Parte Young*, it is appropriate for the Court to exercise jurisdiction over Commissioner Tinklenberg to the extent that Mathiowetz only seeks injunctive relief against the Commissioner. Because the Court denies Mathiowetz's request for preliminary injunctive relief, the Court has not devoted significant time to considering whether the relief sought by Mathiowetz brings this matter squarely within the purview of the *Ex Parte Young* doctrine; in the event that the litigation continues, that issue may arise again.

*Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Publ'g Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986), *cert. denied*, 479 U.S. 1070 (1987). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**2. Likelihood of Success on the Merits**

Although the Court finds that the Defendants have overstated the flaws in Mathiowetz's case, ultimately the Court concludes that, on the record currently before the Court, Mathiowetz is unlikely to succeed on the merits of the claims for which preliminary injunctive relief would be appropriate.

With respect to Mathiowetz's claim that the MRP violates the Davis-Bacon Act and the Minnesota Prevailing Wage Act, the Defendants challenge Mathiowetz's standing. Specifically, they allege that only union employees, who are deprived of the prevailing wage because of the MRP contributions, have standing to challenge the MRP itself. While that may be true of the Davis-Bacon Act,[3] Minnesota law clearly allows a disappointed bidder to challenge the award of a public contract where the bid-letting process was tainted by a violation of the Minnesota Prevailing Wage Act. *See NewMech Companies, Inc. v. Indep. Sch. Dist. No. 206*, 509 N.W.2d 579, 581 (Minn. App. 1993), *rev'd on other grounds*, 540 N.W.2d 801 (Minn. 1995). Thus, to

---

3 *See, e.g., United States v. Binghamton Const. Co.*, 347 U.S. 171 (1954). Because the Court denies the request for a temporary restraining order, the Court need not definitively determine, at this juncture, whether Mathiowetz has standing to bring suit independently under the Davis-Bacon Act. As discussed more thoroughly below, however, the MRP's validity under the Davis-Bacon Act has implications for the ability of Mathiowetz to prevail on his antitrust claims.

the extent that Mathiowetz can demonstrate that the MRP violates the Minnesota Prevailing Wage Act and that the MRP has had some effect on the bidding process, Mathiowetz has standing under state law to challenge the bid-letting and the award of the contract.[4]

The real meat of Mathiowetz's claim, however, is that the grant offered by the Union to SMC violates state and federal antitrust laws. With respect to those claims, the Defendants assert that the MRP falls within the nonstatutory exceptions to the antitrust provisions.

> The Eighth Circuit articulated a test to determine when the nonstatutory exemption is applicable. *Mackey v. National Football League*, 543 F.2d 606 (8th Cir. 1976). . . . Under that test, the parties to an agreement restraining trade are exempt from antitrust liability only if (1) the restraint primarily affects the parties to the agreement and no one else, (2) the agreement concerns wages, hours, or conditions of employment that are mandatory subjects of collective bargaining, and (3) the agreement is produced from bona fide, arm's-length collective bargaining. *Id.* at 614.

---

[4] The MRP may run afoul of the Minnesota Prevailing Wage Act in two ways. First, to the extent that contributions to the MRP caused employees on *past projects* to earn less than the prevailing wage, the funds which the Union has offered SMC are themselves tainted; if some of those past projects involved federal funds, the MRP itself may also violate the Davis-Bacon Act. *See, e.g., Building and Construction Trades Dept. AFL-CIO v. Reich*, 40 F.3d 1275 (D.C. Cir. 1994); *Int'l Bh'd of Elec. Workers, Local 357, AFL-CIO v. Brock*, 68 F.3d 1194 (9th Cir. 1995); Letter from Maria Echaveste, Administrator, U.S. Dept. of Labor, to Robert Georgine, President, Building and Construction Trades Dept., AFL-CIO (June 20, 1995) ("we continue to be of the view that job targeting payments violate the Davis-Bacon Act prohibition against subsequent deduction or rebate . . . where . . . the payments are funded in whole or in part by deductions from wages or employees on Davis-Bacon projects."). Second, the MRP may violate the Minnesota Prevailing Wage Act when, as is anticipated, contributions are deducted from the wages of employees working on *this project*. In other words, assuming the contract is awarded to SMC, union employees will provide services on the contract, and contributions from their wages on this project will be made to the MRP. For those employees for whom the prevailing wage and the bargained-for union wage are the same, the contributions will result in those employees making less than the prevailing wage. That potential harm, however, does not implicate the bidding process because those contributions do not affect SMC's out-of-pocket expenses. Mathiowetz, or some other interested party, might be able to challenge those contributions and seek an injunction to prevent the Union from collecting them, but that harm is not relevant to the analysis of whether the award of the contract itself should be enjoined.

*Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 81 F.3d 858, 861 (9th Cir. 1996). Indeed, similar programs have been shielded from allegations of collusion and predatory pricing by the nonstatutory exception to the antitrust laws. *See id.*; *Local Union 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Sebastian Elec.*, 121 F.3d 1180, 1187 (8th Cir. 1997). Given the facts in this case, however, the Court concludes that there is a substantial likelihood that the nonstatutory exception will not apply, because the MRP likely violates both the Davis-Bacon Act and the Minnesota Prevailing Wage Act.

Specifically, the Court considers it likely that the MRP at issue here will fail the second prong of the *Mackey* test because the agreement does not concern a mandatory subject of legitimate collective bargaining. In *Phoenix Electric*, the Ninth Circuit expressly noted that there was no evidence that "the wages ever dropped below the legal minimum," *Phoenix Electric*, 81 F.3d at 862; the Ninth Circuit remarked on this fact in a context which suggests that, if the MRP has the effect of lowering wages below the legal minimum, such a situation would bring the agreement outside the scope of the nonstatutory exception because negotiating wages *below the legal minimum* is not an appropriate subject of collective bargaining. Similarly, although the Eighth Circuit does not directly address the issue in *Sebastian*, there is no mention anywhere in the opinion of an allegation that contributions to the target fund at issue had the effect of dropping employee wages below the statutory minimum. Here, however, Mathiowetz has provided the Court with evidence suggesting that, for the past several years, there has always been at least one class of laborer subject to mandatory MRP contributions for whom the statutory prevailing wage and the wage bargained for by the Union are the same. As a result, the deductions for contributions to the MRP dropped the wage for these employees below the

statutory minimum, in direct violation of the Davis-Bacon Act.[5] An arrangement which has an illegal effect cannot be the proper subject of a collective bargaining agreement.

Moreover, Mathiowetz has alleged a type of harm which the Eighth and Ninth Circuits did not apparently consider: that "recycling" wages through the MRP and its grants has the effect of artificially inflating the regional prevailing wage. *See Building and Constr. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1280 (D.C. Cir. 1995). As a result, the maintenance and use of the MRP does not affect only the parties to the agreement; rather, it also affects other contractors, who must pay a higher prevailing wage, and the public, which ultimately pays more for every public works project. In other words, to the extent that the MRP violates the Davis-Bacon Act and/or the Minnesota Prevailing Wage Act, the agreement may fail both the first and second prongs of the *Mackey* test.

However, Mathiowetz's problem is that there is no evidence, other than the barest circumstantial evidence, that the Union's offer of $18,000 had any effect on SMC's bid or that

---

[5] The Davis-Bacon Act requires that, on all construction projects funded in whole or in part by federal money, "the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at [the prevailing] wage rate . . . ." 40 U.S.C. § 276a. A mandatory deduction for a job targeting program which results in the laborer making less than the prevailing wage violates the Davis-Bacon Act. *See, e.g., Int'l Bh'd of Elec. Workers, Local 357, AFL-CIO v. Brock*, 68 F.3d 1194 (9th Cir. 1995). Defendants argue that, even if the MRP violates the Davis-Bacon Act, it does not violate the Minnesota Prevailing Wage Act because the state statute does not include the language "without subsequent deduction or rebate." In other words, Defendants argue that the requirements of the Minnesota Prevailing Wage Act are satisfied so long as the contractor cuts a check to the employee which reflects the prevailing wage, even if the union compels the employee to turn around and give some, or even most, of the wage back to the contractor. The Court does not agree that the Minnesota statute should be construed as Defendants suggest, because such a construction would render the statute effectively meaningless and utterly undermine the policies the statute was clearly intended to advance. However, because the precise interpretation of the Minnesota Prevailing Wage Act is not dispositive of this motion, the Court will withhold any definitive determination.

SMC intends to accept that offer. The MRP may be illegal, and Mathiowetz may have standing to challenge the practice independent of the award of this contract, but Mathiowetz's current request for injunctive relief is premised upon the additional contention that the award of funds from the MRP to SMC constituted an impropriety in the public bid-letting process.[6] In other words, Mathiowetz's claims related to the injunctive relief hinge on the Union offering money to SMC *and SMC accepting that money*. Until SMC indicates that it intends to accept the money or until Mathiowetz can produce evidence, beyond temporal proximity, that the Union's offer affected SMC's bid, the evidence that the MRP is itself illegal does not cast any shadow on this particular contract award.

### 3. Irreparable Harm, Balance of Harms, and the Public Interest

In *United Technologies Communications Co. v. Washington County Bd.*, 624 F. Supp. 185 (D. Minn. 1985), Judge Rosenbaum stated that "[i]t is imperative that public bidding procedures be conducted in a carefully controlled and wholly open manner. . . . [T]he loss of the chance to participate in a fair bidding process raises a significant threat of irreparable injury to the plaintiff. The only true remedy for such injury is [injunctive relief.]" *United Technologies*, 624 F. Supp. at 188. This Court concurs. To the extent that Mathiowetz can demonstrate that the Defendants' allegedly offensive conduct tainted the bidding process, *i.e.*, the MRP actually affected the bid submitted by SMC, Mathiowetz will suffer irreparable harm if the contract is awarded to and the Project completed by SMC without Mathiowetz first having an opportunity to participate in a fair bidding process. This harm is in no way dependent upon a showing that

---

[6] As discussed below, Mathiowetz may not have to show that, but for the impropriety, it would have been the lowest bidder. Still, Mathiowetz must, at a minimum, show that there was some genuine impropriety in the bidding process itself.

Mathiowetz would have been awarded the contract but-for the alleged impropriety; the harm is derived from the very existence of the impropriety itself.[7]

Moreover, the public interest favors injunctive relief if, in fact, there is impropriety in the bid-letting process. This is so for a number of reasons. First, the public has a general interest in ensuring the integrity of the public bid-letting process; while an individual impropriety might seem innocuous, any corruption of the process threatens its integrity. The public policy in Minnesota of maintaining an entirely fair and neutral bid-letting process is evident in Minnesota's statutory scheme or requirements for public bid-letting, Minn. Stat. § 16C.05, *et seq*., and relevant case law. *See, e.g., Telephone Associates, supra* n.2.

Second, and perhaps more compellingly, the practice in which the Union and SMC have allegedly engaged, may have the effect of artificially inflating the statutory prevailing wage–which must be paid both to Union workers and non-Union workers–and thus increasing the overall burden on the public fisc. Both federal and state statutory prevailing wages are calculated from the actual wages paid to workers in a given geographical region. To the extent that the MRP has the effect of cycling money from the contractor to the employees to the union

---

[7] In addition, absent injunctive relief, Mathiowetz alleges it will be deprived of the profit it might earn if it were awarded the contract in a fair bidding process. In *Telephone Associates, Inc. v. St. Louis County Bd.*, 364 N.W.2d 378 (Minn. 1985), the Minnesota Supreme Court held that a disappointed bidder could not obtain lost profits from a public contracting agency where the project on which the bid was made was complete by the time the courts resolved the dispute over the bidding process. In that case, the Minnesota Supreme Court found that the plaintiff's bid had been wrongly rejected, but only allowed the bidder to recover the costs of preparing and submitting the bid. *See also United Technologies*, 624 F. Supp. at 188 ("denying United Technologies its requested injunctive relief will deprive it of the actual opportunity to either profit or lose on its bid"). In both *Telephone Associates* and *United Technologies*, however, the disappointed bidder brought its claims against the public contracting agency only; these authorities in no way suggest that Mathiowetz could not ultimately recover lost profits from SMC and/or the Union if Mathiowetz is, for example, successful in proving an antitrust violation.

and back to the contractor, the MRP makes it appear as though employees are paid more than they actually are. This then drives up the statutory prevailing wage, and public works contracts end up costing the public more money. *See Building and Construction Trades Dept., AFL-CIO v. Reich*, 40 F.3d 1275, 1280 (D.C. Cir. 1995). The public interest is served in preventing any activity which will have the effect of artificially increasing the cost of maintaining public facilities; thus, the public interest is served in enjoining any activity which will have such an effect.

Finally, to the extent that Mathiowetz is correct about the merits of its claims, the balance of harms favors injunctive relief. The Court adopts the reasoning of Judge Rosenbaum in *United Technologies* on this issue. *See United Technologies*, 624 F. Supp. at 189-190.

The Court concludes, then, that if Mathiowetz could demonstrate a likelihood of success on the merits, the other *Dataphase* factors support granting an injunction in this matter.

**4. Conclusion**

While the Court finds the Union's maintenance of the MRP to be suspect, at this juncture the Court cannot intervene without evidence that the MRP has had some effect on the bid-letting process for the Sleepy Eye contract. If, after the contract has been officially awarded by MNDOT, SMC agrees to accept the $18,000 offer, or if Mathiowetz can produce additional evidence to suggest that SMC's bid was in any way influenced by a promise of funding from the MRP, the Court's position with respect to injunctive relief could change dramatically. At this time, however, Mathiowetz has offered no evidence that the bid-letting process was actually tainted or that the agreement which allegedly violates the antitrust statutes has been culminated. Accordingly, the award of any preliminary injunctive relief is, at best, premature.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 2) is **DENIED**.

Dated: April 16, 2001

DONOVAN W. FRANK
Judge of United States District Court