**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Mathiowetz Construction Company, a Minnesota corporation,

Plaintiff,

v.

Minnesota Department of Transportation, suing as The State of Minnesota, Department of Transportation; Elwyn Tinklenberg, Its Commissioner; Southern Minnesota Construction Co., Inc.; and Local No. 49 International Union of Operating Engineers,

Defendants.

Civil No. 01-548 (DWF/AJB)

**MEMORANDUM**
**OPINION AND ORDER**

---

Patrick Lee-O'Halloran, Esq., and Dean B. Thomson, Esq., Fabyanske Westra & Hart, 920 Second Avenue South, Suite 1100, Minneapolis, MN 55402, appeared on behalf of Plaintiff.

Jennifer Dick, Assistant Attorney General, Suite 1100, 445 Minnesota Street, St. Paul, MN 55101, appeared on behalf of Defendant Minnesota Department of Transportation and Elwyn Tinklenberg.

Richard Miller, Esq., Miller O'Brien, 1208 Plymouth Building, 12 South Sixth Street, Minneapolis, MN 55402, appeared on behalf of Defendant Local No. 49 International Union of Operating Engineers.

William Penwell, Esq., Siegel, Brill, Greupner, Duffy & Foster, P.A., Suite 1300, 100 Washington Avenue South, Minneapolis, MN 55401, appeared on behalf of Defendant Southern Minnesota Construction Co., Inc.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 22, 2002, pursuant to Plaintiff's Motion for Summary Judgment,

FEB 27 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. FEB 27 2002
DEPUTY CLERK

Defendant Southern Minnesota Construction Co., Inc.'s Motion for Summary Judgment, Defendant International Union of Operating Engineers Local No. 49's Motion for Summary Judgment, and the joint Motion to Dismiss or, in the Alternative, for Summary Judgment of Defendants The State of Minnesota, Department of Transportation and Elwyn Tinklenberg, Commissioner. For the reasons set forth below, Plaintiff's motion is denied and the motions of all Defendants are granted.

**Background**

This action arises out of the bidding process for a Minnesota Department of Transportation Highway Construction Project, SP No. 0801-0028 ("the Project"), for grading, paving, and related road construction on Highway 4 in Sleepy Eye, Minnesota. The Project was originally let in 2000, but there were no acceptable bids at that time. The Project was re-let on February 23, 2001.

The Minnesota Department of Transportation ("MNDOT") received two bids on the Project: one from Plaintiff Mathiowetz Construction Company ("Mathiowetz") for $3,253,119.99, and a second from Defendant Southern Minnesota Construction Co. ("SMC") for $3,113,848.98. MNDOT accepted SMC's bid, and the two bidders were notified.

On March 5, 2001, Mathiowetz drafted a letter to MNDOT opposing the award to SMC on the grounds that the SMC bid was "illegal." MNDOT declined to delay awarding the contract or to engage in any investigation based on what MNDOT considered only a vague allegation with no supporting evidence. Mathiowetz then filed this action and sought a temporary restraining order to enjoin the awarding of the contract; the Court denied that motion.

Mathiowetz alleges that SMC was able to offer an artificially low bid on the Project because it was offered a "grant" from Defendant International Union of Operating Engineers

Local No. 49 ("the Union"). The Union maintains, from its regularly collected membership dues, a fund for "target projects." Specifically, the Union may provide certain contractors with a grant to defray the costs of using union employees and to thus allow the contractors to bid more competitively. According to the Union, the fund is used primarily as an inducement to non-union contractors, a carrot the Union can offer to encourage these contractors to use union employees. The funds may be used for other purposes, though, such as offsetting the costs of paying the wages required by the Union's collective bargaining agreement. The fund and the grants therefrom are generally referred to as the "Market Recovery Program" ("MRP").

According to Fred Dereschuk, the Business Manager and Financial Secretary for the Union, the MRP is funded entirely by membership dues. Union members pay both working and monthly dues. Union members are charged working dues at a rate of 1½% of their hourly wage; working dues are typically paid through a paycheck deduction, although some Union members pay working dues separately. According to Dereschuk, about six cents ($.06) per hour of working dues ends up in the Market Recovery account. Thus, no matter what the hourly wage of a Union employee, the Union collects six cents per man-hour to fund the MRP. The difference between 1½% of the employee's hourly wage and six cents is used for other dues-funded programs, projects, and expenses.

In the Complaint, documents supporting the motion for temporary restraining order, and even the Amended Complaint, Mathiowetz alleged that the Union promised SMC an amount between $100,000 and $300,000. Mathiowetz had little more than hearsay to support that allegation, and now the record supports only the proposition that the Union offered SMC an $18,000 grant. The Union offered the grant three days before the bids on the project were due; under the terms of the grant offer, SMC had 10 days after the contract was officially awarded in

which to accept the grant. To accept the grant, SMC would have had to employ only union subcontractors, and SMC ultimately declined the grant.

In his Amended Complaint, Mathiowetz seeks a declaration that the MRP violates the federal Davis-Bacon Act, 40 U.S.C. § 276a(a), and the Minnesota Prevailing Wage Act, Minn. Stat. § 177.44, because the MRP returns wages to contractors, via the Union, so that the employee effectively makes less than the statutorily required prevailing wage. Mathiowetz further seeks a declaration that SMC's bid violates Minn. Stat. § 325D.04, which forbids selling any "commodity, article, goods, wares, or merchandise" below cost; Sections 1 and 2 of the Sherman Antitrust Act; and state antitrust provisions. Finally, Mathiowetz seeks damages under Sections 1 and 2 of the Sherman Antitrust Act, on the basis that the grant from Union to SMC, a grant made possible by prior violations of the Davis-Bacon Act and the Minnesota Prevailing Wage Act, constitutes collusion and allows for predatory pricing in restraint of free trade.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

Before the Court turns to the sufficiency of the factual predicate for Plaintiff's claims, the Court must first consider issues of subject matter jurisdiction and justiciability.

**2. The Eleventh Amendment**

The State Defendants correctly argue that the Eleventh Amendment bars this Court from entertaining any direct claims against the Minnesota Department of Transportation. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). This Court only has jurisdiction over claims against state officials for violation of federal laws, and even then only if the remedy sought is purely injunctive. *Id.* Accordingly, the Court's jurisdiction is limited to Plaintiff's claims against Commissioner Tinklenberg for violation of the Davis-Bacon Act and federal anti-trust laws insofar as Plaintiff seeks injunctive relief for these claims. All other claims should be dismissed without prejudice because the Court lacks subject matter jurisdiction over them.

The State Defendants assert that Plaintiff has not properly pled a claim that is amenable to injunctive relief. The Court need not address this concern because the Court finds that Plaintiff's Davis-Bacon Act claim and his federal anti-trust claims are defective for other reasons, discussed below.

### 3. The Davis-Bacon Act Claims

Plaintiff seeks a declaration that the Defendants have violated the Davis-Bacon Act, 40 U.S.C. § 276a, *et seq*. The Davis-Bacon Act requires that construction contracts to which the United State is a party or which are funded, in whole or in part, by federal money must include provisions establishing the minimum wage to be paid various classes of laborers, those minimum wages being consistent with the "prevailing wage" for the contract's locale as determined by the Secretary of Labor.

The Davis-Bacon Act, however, does not create a private right of action. *See, e.g., United States v. Binghamton Const. Co.*, 347 U.S. 171 (1954); *Peatross v. Global Associates*, 849 F. Supp. 746 (D. Haw. 1994). Plaintiff argues that the lack of any private right of action does not affect his ability to seek a declaration of rights, pursuant to 28 U.S.C. § 2201, based upon a claim that the Davis-Bacon Act was violated. The Court cannot agree.

The Plaintiff relies heavily on language in the Court's April 16, 2001, Order denying Plaintiff's Motion for Preliminary Injunction. In that Order, the Court noted that "Minnesota law clearly allows a disappointed bidder to challenge the award of a public contract where the bid-letting process was tainted by a violation of the Minnesota Prevailing Wage Act." Plaintiff may have standing, under Minnesota law, to assert a claim based upon the Minnesota Prevailing Wage Act, but that does not necessarily translate into standing, under Federal law, to assert a claim based on the Davis-Bacon Act. Standing to assert one claim does not necessarily imply standing to assert another.

> The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of

> the defendant, and that the injury will likely be redressed by a favorable decision. In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Like their constitutional counterparts, these "judicially self-imposed limits on the exercise of federal jurisdiction" are "founded in concern about the proper–and properly limited–role of the courts in a democratic society" . . . . Numbered among these prudential requirements is the doctrine . . . that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.

*Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Even assuming that Plaintiff has alleged an injury-in-fact, Plaintiff's grievance does not fall within the "zone of interest" protected by the Davis-Bacon Act. The statute "was not enacted to benefit contractors, but rather to protect their employees from substandard earnings by fixing a floor on wages on Government projects." *United States v. Binghamton Const. Co.*, 347 U.S. at 176-177.

The Court concludes that Plaintiff lacks standing to assert a claim–even a claim for declaratory judgment–premised upon the Davis-Bacon Act.

**4. Antitrust Claims**

Similarly, the Plaintiff lacks standing to assert its claims under sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2. To maintain a private right of action under the Federal antitrust statutes, a plaintiff must demonstrate an injury to their "business or property by reason of anything forbidden in the antitrust laws . . . ." 15 U.S.C. § 15(a); *Lovett v. General Motors Corp.*, 975 F.2d 518 (8th Cir. 1992). In moving papers, Plaintiff alleges the following injuries to its business or property: (1) that but-for the illegal activity Plaintiff would have won the Sleepy Eye project and would have made a profit thereon; (2) that Plaintiff has been deprived of the fundamental right to participate in a fair bidding process; (3) that but-for the illegal activity Plaintiff would have won other bids and would have made a profit on them; and (4) that the

effect of the illegal activity is to artificially raise the prevailing wage, thereby increasing Plaintiff's business costs.

At the outset, the Court notes that the last two of these alleged injuries are not properly pled in the Amended Complaint. Moreover, with respect to the claim that the allegedly illegal activity artificially increased the prevailing wages, Plaintiff has offered no evidence of this fact, only bald assertions in its moving papers.

With respect to the contention that Plaintiff lost profits for the Sleepy Eye project because of the Union's offer of a grant to SMC, the record simply does not support this contention. There is no admissible evidence in the record to support Plaintiff's claim that the grant offer was between $100,000 and $300,000. Rather, the only evidence in the record indicates that the offer was $18,000. Even assuming that the offer affected SMC's bid, it would at most have lowered the bid by $18,000. The difference between SMC's bid and Plaintiff's bid far exceeded $18,000.

Plaintiff argues that the Court should not assess Plaintiff's injury against the counterfactual in which the grant offer was never made. Rather, Plaintiff argues that the Court should assess Plaintiff's injury against the counterfactual in which the grant offer was made, the grant offer affected SMC's bid, and the State of Minnesota voided the bid as illegal. In that counterfactual scenario, Plaintiff would have been the only bidder and thus would have won the contract. The Court finds that this approach is flawed. Under such an analysis, every aggrieved competitor could demonstrate injury-in-fact because, if the counterfactual comparison is made against a world in which the offending competitor is removed from competition, the aggrieved competitor could always demonstrate harm. The correct analysis is to measure injury in comparison to a world in which the offending conduct did not occur–here, where the grant offer was never made.

Plaintiff's final contention is that its injury is that it could not participate in a fair bidding process. As the Court noted above, such a grievance may confer standing on a plaintiff to assert a state claim in Minnesota, but it does not necessarily follow that it is sufficient to confer standing to assert a federal antitrust claim. Again, if an antitrust plaintiff had only to assert that the offending behavior deprived him of the right to participate in a market free from offending behavior, the injury-in-fact requirement would be rendered meaningless. The Court concludes that this sort of abstract harm is not sufficiently concrete to satisfy the requirements of 15 U.S.C. § 15(a).

**5. Conclusion**

The Court has concluded that it lacks subject matter jurisdiction over most, if not all, of the claims against the State Defendants. The Court has further concluded that Plaintiff lacks standing to pursue his claims premised on federal law. In a situation such as this, where the remaining state law claims will involve interpretation, as a matter of first impression, of state statutes, it is particularly important that the Court decline to exercise supplemental jurisdiction over the remaining claims. While the Court understands that this may result in the parties "starting from scratch" in a State Court forum, a result which is neither particularly efficient nor particularly fair, the alternative is for the Court to overstep its jurisdictional authority. Accordingly, the Court finds that all remaining state claims should be dismissed without prejudice.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 79) is **DENIED**.

2. Defendants Minnesota Department of Transportation and Elwyn Tinklenberg's Motion to Dismiss or for Summary Judgment (Doc. No. 54), Defendant Southern Minnesota

Construction Co., Inc.'s Motion to Dismiss or for Summary Judgment (Doc. No. 65), and Defendant Local No. 49 Independent Union of Operating Engineers's Motion to Dismiss or for Summary Judgment (Doc. No. 89) are **GRANTED** as follows:

a. Plaintiff's claims for declaratory, injunctive, and monetary relief premised on the Davis-Bacon Act, 40 U.S.C. § 276a, *et seq.*, and the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, are **DISMISSED WITH PREJUDICE** as to all Defendants.

b. All other claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 27, 2002

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*